Submitted on record and appellant's brief January 17, reversed May 15, 1991

Ronald O. BARRELL
and Mary G. Barrell,
*Respondents,*

*v.*

Myke L. HOLMES,
*Appellant.*

(86-2006; CA A65098)

811 P2d 921

Gregory P. Lynch, William J. Storie, and Gray, Fancher, Holmes & Hurley, Bend, filed the brief for appellant.

No appearance for respondents.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

**EDMONDS, J.**

Defendant appeals from a judgment of civil contempt for failure to comply with a mandatory injunction. ORS 33.010(1)(e).[1] He argues that the trial court erred, because there is no evidence that he acted with "bad intent" or that he wilfully violated the order.[2] We reverse.

In November, 1987, the court enjoined defendant from violating the covenants and conditions of a subdivision that restricted the height of residences to one and one-half stories. It ordered him to remove portions of his house higher than that within 90 days. Defendant appealed to this court and filed a cost bond that stayed the 90-day period. *See* ORS 19.050(3);[3] *State ex rel McKinley Automotive v. Oldham,* 283 Or 511, 584 P2d 741 (1978). We affirmed without opinion. 94 Or App 343, 765 P2d 1265 (1988). Defendant then sought review by the Supreme Court, which was denied. 307 Or 514, 770 P2d 595 (1989). The appellate judgment was entered on May 9, 1989. The 90-day period after entry of that judgment ended on August 7, 1989. Plaintiffs moved to have defendant held in contempt on July 26, 1989, and a hearing was held on the motion on April 10, 1990.

At the hearing, the court held defendant in wilful contempt for his failure to comply with the judgment. It found:

"The evidence presented by the Plaintiff's own testimony demonstrates that not only has the Defendant failed to

---

[1] ORS 33.010(1) provides, in part:

"The following acts or omissions, in respect to a court of justice, or proceedings therein, are contempts of the authority of the court:

"* * * * *

"(e) Disobedience of any lawful judgment, decree, order or process of the court, except as provided in ORCP 78 C."

[2] Because of our disposition of this case, we do not reach defendant's other assignments of error.

[3] ORS 19.050(3) provides:

"In cases not provided for in ORS 19.040(1)(a) to (d), and except as provided in subsection (4) of this section, when an appeal is perfected, with an undertaking for costs on appeal only, proceedings shall be stayed as if the further undertaking thereof had been given."

The injunction here is not one of the judgments enumerated in ORS 19.040(1)(a) to (d), nor was ORS 19.050(4) brought into play.

comply with the Order of Judge McMullen requiring removal of those portions of the premises in excess of one and one-half stories in height, but that the Defendant has placed an additional 4-6 feet of rafters on top of the structure already determined by Judge McMullen to be 'at least two full stories of height.' *See,* Order, Page 1, Lines 18 through 20, wherein Judge McMullen finds that paragraphs one through nine of Plaintiffs['] First Amended Complaint for Injunctive Relief have been proven beyond a reasonable doubt. In other words, the size and configuration of the structure remains essentially unchanged (with the exception of the *addition*) since November 25, 1987.

"The Defendant's evidence was to the effect that following entry of the Order, he employed the services of one Keith Chrisman, an architect, to assist him in bringing his building into 'compliance.' The objective was to make the upstairs portion 1/2 of the square footage of the downstairs, thereby satisfying one of a variety of definitions of 'story and a half.' Preliminary plans were drawn, but nothing of real substance came of C[h]risman's involvement.

"Further, Mr. Holmes testified that his efforts to comply with the Order were interfered with by the following personal complications:

"1.   A dissolution proceeding that tied up all of his personal assets;

"2.   A dissolution proceeding involving his partnership with one Mr. Egan tied up all his business assets; and

"3.   While working on a construction job he successfully bid out, he was injured, keeping him from altering the structure during his convalescence.

"Mr. Holmes concedes that he hasn't removed any portion of the premises since the date the Order was signed by Judge McMullen." (Emphasis in original.)

The court concluded:

"Since the date of that hearing the Defendant has done *nothing* towards removing 'those portions of the premises * * * in excess of one and one-half stories in height,' not to mention failing to comply with Judge McMullen's mandate that the removal be completed 'within 90 days of the date the judgment is entered.'

"There was no stay of the Circuit Court Order; therefore the prescribed ninety day period would begin November 25,

1987. Indeed, since that date the Defendant has been able to employ an architect, and add structural components to the building under the guise of compliance (when in fact these alterations are a further deviation from that order entered by Judge McMullen through an *increase in height*).

"It is true that the Defendant had his share of personal and professional difficulties during the past two years, but apparently he was able, during that period, to successfully bid out contracts and maintain gainful employment, and therefore should have been able to do more than nothing towards accomplishment of the requirements of the court Order.

"[H]e failed to take *any* meaningful affirmative action towards rectifying his breach of the covenants and restrictions of the Lee Williams Addition. This demonstrates an absence of good faith, the presence of wilfulness and is of itself proof justifying the result that the Defendant is in contempt of Court. The Order of November 25, 1987, contains a finding by Judge McMullen, and beyond a reasonable doubt I might add, that the structure is 'at least two full stories of height.' In sum, the Defendant didn't even break out a hammer to remove even a single nail to even superficially attempt to comply with Judge McMullen's Order." (Emphasis in original.)

Defendant argues that the court erred in finding him in contempt, because the evidence establishes that he attempted to comply with the judgment. We review to determine if there is substantial evidence to support the court's determination that defendant acted wilfully and with bad intent during the 90 days after the effective date of the appellate judgment.[4] *State ex rel Oregon State Bar v. Wright,* 280 Or 713, 573 P2d 294 (1977); *Couey and Couey,* 105 Or App 478, 481, 805 P2d 716 (1991).

Contrary to the trial court's conclusion, there was a stay of the judgment, and the 90-day period did not begin on November 25, 1987. We focus on the evidence of whether defendant's failure to comply with the judgment between May 9, 1989, and August 7, 1989, was wilful and with bad intent. Defendant testified that, from November, 1987, until April, 1990, his personal and business assets were the subject

---

[4] We assume that the trial court's finding that defendant acted "in the absence of good faith" is equivalent to a finding that he acted in "bad faith."

of court orders in other legal proceedings that restricted their use during that period. He said that, as a result, he was unable to secure enough bonding for his construction business and that those factors prevented him from financing any "substantial construction" with respect to the house. Although the trial court focused on the addition made to the house, the record does not establish with any definiteness when defendant made the addition.

Also, there is no evidence to support the trial court's finding that "apparently [defendant] was able * * * to successfully bid out contracts and maintain gainful employment, and therefore should have been able to do more than nothing towards accomplishment of the requirements of the court Order" during the pertinent period. Defendant is entitled to the benefit of a presumption that he acted in good faith. *State ex rel Oregon State Bar v. Wright, supra,* 280 Or at 720. There is no indication that the trial court considered the effect of the presumption. For all of these reasons, there is not substantial evidence to support the trial court's conclusion that defendant's failure to comply with the judgment "demonstrates an absence of good faith." Accordingly, the trial court erred in finding defendant guilty of contempt.

Reversed.